Good morning, Your Honor. Good morning. My name is Suzanne Lee Elliott, and may it please the Court and Counsel, I represent Mr. Christian. I would like to reserve four minutes for rebuttal. Okay. You have whatever time is left on the clock when you sit. Thank you. The issue in this case is whether the trial court erred in concluding, as a matter of law, that the behavior of the officers during the initial detention, including a demand for identification for Mr. Christian, was reasonable under Terry v. Ohio. It is Mr. Christian's contention that the trial court was incorrect because three cases issued by this Court unambiguously hold that compelling an individual to identify himself during a Terry stop violates the Fourth Amendment. In those cases, in each of the cases cited in your brief, there was something more, was there not, than just failure to identify? I mean, there was nothing more than failure to identify. I beg your pardon. In this case, there was a good deal more. He identified, he called himself Rick James. There had just been a word in that same building that someone was brandishing a gun. Why doesn't this distinguish the cases you cited from this case? Well, the cases are distinguishable in two ways. One is they're Section 1983 cases, so of course they went in a civil context. There was no criminal conviction, and there was nothing more in terms of proof of a crime. The reason why I believe the Christian case... I mean, all those cases say is that you can't make it criminal to refuse to identify yourself. You can't make it a criminal offense. That's correct. That's all they hold. The reason why Christian, I think, falls more closely under those than any other cases is this. The state or the government forcefully argued below that there was no probable cause to arrest. If one carefully parses through the testimony of the officers in this case, they... It's clear from their testimony that their theory was not that they were investigating the crime of brandishing the gun. When they questioned Mr. Christian in the hallway, their first and only directive intent was to get him to identify himself. They had patted him down. He had no... Well, a Terry pat-down is for officer safety, so the courts have always approved the pat-down of an arrested individual to... Right, but the reason you have an issue of officer safety is because the officer has some legitimate reason to be in close proximity to the individual. That's correct. There has to be some reasonable suspicion. There has to be something that puts the officer close enough to the individual so that the individual could be in danger, could reach in and pull out a knife or whatever. So that's the whole rationale. So it seems to me Terry presupposes that the officer can ask for identification and can spend some time resolving the kind of preliminary issue that justified the stop to begin with. Your Honor's correct. Other circuits have agreed with you on this issue. Your own circuit has not. And the United States Supreme Court has left open the question of whether or not under legitimate Terry's stop, an officer can not only pat the individual down but request identification. So, of course, because the Supreme Court has left it open, the circuits have been free to disagree. In fact, Mr. Miyake does cite an Eighth Circuit case which comes down on the opposite side of the Ninth Circuit on this issue. And your other cases, the Lawson-Martinelli and Kerry cases, acknowledge that the circuits disagree on this. So you would be absolutely correct if you were sitting in the Eighth Circuit, Your Honor. I'm not certain that that position that Terry allows you to request identification is tenable in the Ninth. Well, isn't there a difference between asking and requesting identification and then making production of the identification somehow contingent on or related to whether you will be arrested? Well, in this case, Mr. Miyake argues that the failure to produce identification or the giving of what the officers termed a false name then gave the basis for an arrest under the Seattle Municipal Code Ordinance false reporting. It seems to me that's a red herring kind of argument because in all the cases decided by this Court, Lawson, Kerry, and Martinelli, there was a statute that made it criminal to either not tell the officer your correct name or to not give identification. In this circuit, those statutes would violate the Fourth Amendment without more. In this case, it seems to me clear that the officers had every ind — well, first of all — Yeah, but right there, isn't that the distinction is that what the courts were saying in that case is that you really can't have this freestanding statute that turns something into criminal activity, which is not really criminal activity. Here, you are not criminalizing his failure to respond. It's simply part and parcel of the Terry exchange. Isn't that the difference between the civil rights cases and this case? Because the officers went on to find, when they took him down to the vehicle, the only purpose of which was for him to pursue what they considered to be valid identification, Mr. Christian was arrested. Once they got into the vehicle, there was all sorts of other probable cause to arrest him. But what the officers told him up in the hallway was, absent the production — one, they said, we ran your name through our computer, and there's — you've given us a false name. How not being in the Seattle Police Department's computer and giving a false name is a logical connection, I don't know. But they said, you're not who you say you are. Then they told him, if you don't give us this valid identification, we will arrest you for false reporting. But that's where I read that, and I thought this might be a different case if we were to credit that testimony. My question is whether Judge Kunawer, in making his voluntariness decision, actually credited the officer's testimony instead, and whether we have to then, in effect, discount that testimony that you're now referring to. I — it's difficult to know because, as I point out in my brief, the Lawson, Martinelli, and Kerry cases were not drawn to Judge Kunawer's attention in the trial court. So I certainly, in defense of Judge Kunawer, don't condemn him for not considering this question under those cases. But I do believe that he didn't actually get — if you look at his written order, did not actually get to that issue because he found that the request for identification was permissible under the Terry umbrella, which is — standing alone is wrong under the law — the published cases in this circuit. So — and the other reason I don't believe he got to that issue was because below the government's theory was that they didn't have to get to the issue of probable cause to arrest, that that was not their argument, that all of this occurred before there was probable cause to arrest. If you look at their trial brief, which is at, I believe, E.R. 38, where they argue that this is not a probable cause case, this is a Terry stop case. So I'm going to save whatever time I have for rebuttal. I would like to point out, however, that my client has made efforts to gain release pending this appeal. It's been delayed by the fact that his prior counsel was appointed a judge. He now has about 15 months left to serve. So he asked that I pray the Court for an expeditious conclusion to this case. Thank you. Thank you. We'll hear from the government. Good morning, Your Honor. May it please the Court, Counsel. I'm Bruce Miyake. I represent the government in this matter. Unlike the cases cited by the defense, this is not a case where a defendant was arrested simply because he refused to identify himself. Here the defendant voluntarily undertook to provide the police with a false name, which the police were unable to confirm. And it's that affirmative conduct that distinguishes it from the Lawson, Martinelli, and Kerry lines of cases. At that point, was there probable cause to arrest? I believe there was. And contrary to what Ms. Elliott is saying, we did, in our brief, argue that there was probable cause. I think there are two bases to uphold the Court here. One is that the police did not exceed the reasonable limits of a Terry stop. And number two, that at that point there was probable cause. Why don't you explain that to me? Why was it probable cause at that point? Well, probable cause is whether or not there is trustworthy information, a reasonable person would believe that a crime has been committed. Here the officers had responded to a 911 call of a 15-year-old girl who indicated that a man had been waving a gun at her. If that's all they had, there wouldn't be probable cause. But they went further than that. They responded. They interviewed the young girl. And they described her demeanor, which was consistent with the 911 call. She was hysterical. She was extremely upset. In fact, it took time for them to calm her down. And then she gave them a very clear complaint about what happened. And it wasn't just general facts. She indicated that they had an argument and that during that argument, he pulled a gun out and waved it around. Now, the officer questioned her on that because it would make a difference whether or not the gun was actually pointed at her or it was just brandished. And she didn't exaggerate the fact. She merely said it was brandished. And under those situations where a victim reports a crime, there are – Okay. What was the crime? The crime would be menacing under the Seattle Municipal Code. So the pointing would make a difference in the degree of the crime? Yes. It would be a crime even if you were waving it around? Yes. She also gave the name Rick Smart, did she not? I believe she gave the name Mr. James. Mr. James. Mr. James. And then when he encounters him at the elevator, he says his name is Rick James. He does indicate that his name is Rick James. But I think under those circumstances, under the fatality of the circumstances there, that the officers had probable cause. So the fact that the name was run through the computer didn't – they couldn't verify it, that has no bearing on it? Well, I think that if you were to find that there was not probable cause at the point that they confront him and ask him for his name, I think that it could have a bearing on it because there would not only be – as they talk to him, he's very nervous. They ask him about a gun. He's very evasive. In fact, as the officer testified, he appears to be playing word games. Do you have a gun on you? I don't have a gun on my person, which led them to ask another question. Well, do you have a gun in your apartment? I do not have a gun in my apartment. I'm a little influenced in all this by the fact that the officer didn't handcuff him at that point. And, you know, if he thought he had probable cause, based on the description and the conversation with the young girl, I mean, there was a mother there, too, who was supposedly present and didn't back up any of the girl's story, right? I – Didn't contradict, but certainly did not back up. I would agree with that. If you have a hysterical teenager there saying his gun was wearing a gun around and her mom was there, the mom would say yes. You know, the guy was – but nothing like that happened. But the mom was the girlfriend of Rick James, wasn't she? That's – and that was the point I was going to bring up. The mom was the girlfriend of Rick James, and although she – She was the daughter of the girlfriend of Rick James. What is that? She had torn loyalties, I guess. That was the best that I could say. I understand. But if the officer thinks, okay, you know, this guy, Rick James, had probable cause to arrest him, and this guy walks out and says, I'm Rick James, you expect the officer to say, okay, you're under arrest, and put handcuffs around there and march to the police station, and you worry about who he is later. Instead, the officer acts like he doesn't think he has enough probable cause. You don't have to sort of wonder how much he embellished in telling the story later or how much sort of helped build it up. But right there on the spot, he does not act as if he's got probable cause to arrest for crime. Instead, he says, give me your name and don't stick your hands in your pockets. Well, I think what he was trying to do as he – specifically, he puts handcuffs on him not because he now thinks he got him under arrest, but because he thinks, you know, those suspicious sticking hands in their pockets might be dangerous, right? Yes. I mean, they were concerned for their safety, and they were also concerned that he might run away. The record reads that he's looking, you know, back and forth, and he's getting extremely nervous. He puts his hands in his pockets. But you agree, do you not, that if an officer is confronted with an individual where the officer believes he has a probable cause to believe that he has committed a crime involving a weapon, what he would normally do in Seattle or any place else in the country is put handcuffs on him and say, let me read you Miranda warnings. You're under arrest. And put handcuffs on him. That would be particularly a single officer, right? There were two officers that actually interviewed the victim, and then there were two officers that were out in the hallway. So what's the purpose of a Terry stop? The purpose of a Terry stop is to investigate potential criminal activity. And the potential criminal activity is the brandishing of the gun. That's right. So what does the identification have to do with anything about the brandishing of a gun? Well, Your Honor, it's well established that police during a Terry stop can request identification, and identification serves a very useful tool. They're investigating a potential crime of violence. Right, absolutely. But if you've got probable cause, you take them down to the station, and they have ways of, you know, they can take fingerprints, they can take photographs. The officer says they can do it at the station. They don't do that. You can request Terry identification, but you have the authority that you can require it. Do you have the authority to require it? Yes. I think the law as it currently stands in this circuit is no, you can't without more. Without more circumstances demand it. But it depends upon the circumstances. In this situation here, I think a very distinguishing fact is when a person gives you a false name, and they lie to the police, and the police catch them in the lie, they can follow up on that. They can ask aggressive questions. The Supreme Court has said that they can ask questions in such a way where it's calculated to get answers. So I think under those circumstances you can. But the Supreme Court also left open this whole issue quite clearly in the case that it took from our court, Lawson, the Kohler case, it left open this whole question of how far you could go in a Terry stop for identification. So we don't really know the answer to that question, do we? No, there is no definitive answer. And quite frankly, as the cases indicate, there is no bright-line test when a Terry stop crosses over to a de facto arrest. And the reason for that is it depends upon the circumstances that the officers are faced. And that's why you have this mismatch of cases. When you read some cases, they'll say handcuffing is a de facto arrest, and yet you have another case with different circumstances. They'll say handcuffing is not. But it's rare to find a case where no handcuffing amounts to a de facto arrest. There's some cases where people are handcuffed. They say, well, they were handcuffed for their safety, for the safety of others, or what not. But I've never seen a case where the officers didn't say you're under arrest, didn't put handcuffs on the guy, and yet he was under arrest. I mean, those cases are pretty rare, you'll admit. I would admit that. And I think there's a difference here. Having probable cause to arrest and actually placing a person in physical custody are two different things. Absolutely. But I have yet to see a police officer who were confronted with probable cause to arrest doesn't actually arrest somebody. The officer gave an explanation at the time, did he not? He said I wanted to hear his side of the story just to confirm it. Yeah, and that's exactly what he was trying to further investigate. Although, I mean, and that's not an unusual situation. Once you have probable cause to arrest, there are those situations. I would agree with you, Your Honor, that most of the times officers will physically arrest a person. But that's not always the case. A lot of times, especially in a domestic situation, which they somewhat categorize this as, they want to get the countervailing version. And that's what he was trying to do. But you agree, do you not, that giving a false name has no bearing? I mean, the fact that his name turned out to be false has no bearing on whether there was more or less probable cause to arrest him for the crime of banishing the weapon. I would agree to a point, but I would say this, that in determining... You don't agree to a point, sir, like disagree. Well... Just go ahead and disagree. With all due respect, I disagree, Your Honor, because I, in this case, not only did they have the complaint of the victim, but they also, when they spoke to him, he was nervous, he was evasive. When they asked him questions about his name, he appeared to be dishonest. And I think when you look at the totality of those circumstances, all of that added together gave them probable cause. Now, just one other point... I'm sorry. You didn't answer my question. You said disagree with the complaint. Does the fact that the guy gave a false name add to the probable cause to believe that he's the guy who burned the weapon? You know, that's capable of a yes or no answer. You can agree or you can disagree. If you think it does, tell me why. And I tried to do that. I think that it does. I don't think you did that. You talked about being nervous and all that. You talked about everything but the fact that he gave a false name. So why don't you now answer my question? Okay. I think that in addition to the nervousness, the providing a false name, the officers did not trust any information that he was giving them. Because in addition to giving... Well, we have law that says you can't be required to give your real name. I understand. You have constitutional right to lie about who you are. You do have constitutional right to lie about who you are. But if you undertake to lie about your identity and you get caught, the police can further detain you to question you. And that was another point that... It's one thing to say, okay, now tell me your real name. Then we run into this situation where then he gets handcuffed and then he gets hauled down to the parking garage and there's a conflict in the testimony there. He says, look, I was going to get arrested if I didn't show him my ID. And, of course, the officer in a very oblique way says he showed me where his keys were. Obviously, he couldn't get his keys. He was handcuffed at that point, right? Right. So what do we make of that testimony, which sounds like he's kind of between a rock and a hard place here. He's given him his name. He says, I'm from Florida. Try the Florida database. They don't believe him. Why at that point do they need his identification for anything to do with the crime upstairs? Well, I would agree with you that at that point their focus had turned solely to the identification. Because at that point, if a person lies to the police during a voluntary stop about their identification and they're caught or they give any false information, there is a crime of false reporting and you can be arrested for that. How do we know it's false reporting when they haven't even seen if he has a license in his car at this point? I mean, he's not required to give it to them. He's not required to. I mean, the law leaves us in this very funny hops of a choice. It seems to me you're not required to give them your ID, but now you're saying, but you might be arrested because you gave false information. And I guess what I'm saying is by being asked a question that you're not obligated to constitutionally provide an answer to, you've now ended up to be a criminal on count two. How can that be? Well, I don't think that the law is such that it allows a person to undertake to lie to police officers during a Terry stop. And if you get caught, there's nothing more they can do. Why not? Well, because. You don't have the obligation to talk to them. You don't have any. I would agree. You don't have any obligation. Turn away and walk down the street, right? You could. You could turn away and there's absolutely. You're not required to give them your name. You're not required to give them your name. Why can't you give them a false name? You can't give them a false name. But what I'm saying is that when you undertake to give the police a false name, you run the peril that if you get caught in that, you can be arrested. You can call them names. We have a case law that says you can call them names. Well, you can call them names. I mean, you can give them obscene hand signals. I mean, it's not a good idea. But you are a police constitutional officer. Police can't do anything about it, right? I agree under those circumstances, but that is not the case here. Does that contribute to the suspicion for the crime of brandishing? I'll answer your question directly on that. No, it does not contribute to that. But what it does contribute to is a suspicion of a further crime of false reporting, i.e., providing false information to a police officer. And I think that. Is it a state law offense? A state law offense. Secondly, just with respect. Let me ask you then on the judge's finding that Mr. Christian voluntarily said he could go down and take the keys and look in the car. Under what standard do we review? That is under clear error. Because that's the nature of a factual rule. Yes. The consent issues are fact-driven, and therefore they're reviewed under clear error. So how does that play into this whole? We start with the gun, and now we're ending up with identification. So where does the link come in terms of the judge's voluntary finding? What is the significance of that? Well, I think that what you have is you have two separate issues. You have whether or not during the Terry stop the police exceeded the reasonable bounds of the stop and he was under arrest. That's one issue. And then the second issue is whether the consent was voluntary. Our position is that he was not under arrest, and even if you find that he was under arrest, that there was probable cause. With respect to the issue of consent, I'll say this. I'm running out of time. I've run out of time here. That it is under clear error, and despite what Mr. Christian testified to at the hearing, the Court discredited that and credited the officers, both who testified that it was him who brought up the idea of the identification in his car, and it was him who volunteered to take them. And that there, under the clear error standard, should stand and I think controls that particular issue. There are no further questions. Thank you, Your Honor. Very briefly. I miscited the court to the record where the government argued below that this was not a probable cause case. That's at ER 36. What the government says is the defendant does not contest the lawfulness of his initial detention. He argued that the officers exceeded the permissible bounds, and his investigatory detention ripened into a de facto arrest. Below, the government argued vigorously that because I believe they recognized the thin ice, thin probable cause ice they were skating on, that this was not a probable cause case. This was a terror case. As a result, Judge Kunawer did not proceed to the issue of probable cause in his written order. As to the issue of how does the consent relate to the demand for identification, the question is whether that consent, whether the illegality of the demand for the identification tainted the subsequent by the illegality. It's not illegal to ask for identification. It's not illegal. It's not illegal, and under our case law, he's entitled to say nothing. Is he entitled to lie? I do not know how it can be constitutional to arrest someone for giving a false name when they don't have to give any name at all. It's pretty easy. You say, look, you can refuse to tell them what your name is, but if you go a step further and give them a false name, then you commit a crime maybe of whatever. False reporting, I think is what they call it. Well, whatever it is, like the state equivalent of 18 U.S.C. 1001, right? We used to have the Excavatory Note Act, but that doesn't exist anymore. Yes. So Mr. Miyake's read of the law is you must stand silent. I don't think that's what Lawson, Martinelli, and Kerry say. I think they say that the ---- They certainly don't say you can lie. They certainly don't say you can lie, but the ---- What they say is the fact that you don't give them your name can't be made a criminal offense. That's the sum and substance of what they say. That is the sum and substance of what they say. And there's other information related to the crime other than the personal identification that I suppose could be criminalized in the obstructing context. But the problem here, then, is when everyone says he's Rick James and the officers aren't satisfied by that ---- But ask him. He's the first one who says he's Rick James. As do the other witnesses to the event. And then the only reason they conclude that he's given them a false name is because in their computers they can't find that name. How is that proof of a false name? The small says it was Rick James and the mother says it was Rick James and he says I'm Rick James. That's quite different than just making up I'm Mr. X. That's correct. There's no connection with the brandishing, even if it's his incorrect name. I see Your Honor's point. But I guess my point was that once everyone had identified him as Rick James, why did the police think he's giving a false name? Why is there this demand for something that they determined to be legitimate identification? Then you're into the whole law enforcement question of wanting to run your name through to see if you've got any priors and see what kind of guy you've got here. Isn't that a legitimate thing for them to do on the scene? No, I don't think it's legitimate to say because we can't find the name Rick James, a fact I find hard to imagine given the name Rick James, but the fact that you can't find the name Rick James in some computer somewhere give rise to any kind of suspicion about anything. I mean, that is not the gravamund, the be-all, the end-all, the test of whether or not you are or are not Rick James or Suzanne Lee Elliott. I think the police find it suspicious that there's anybody who has got something in their computer. Well, it may be an unusual circumstance in this modern age, but it's not criminal not to be in a computer. Thank you. I appreciate the Court's attention. Thank you, Counsel. The case is now in its tenth minute. We'll next hear argument in Firmasone v. Bonhart.
judges: D Nelson, Kozinski, McKeown